And we will move on to the second argument, which is de Oliveira v. Garland, case number 23-4123. Ms. Dominguez? Ms. Dominguez? Good morning. I'm here to represent Naira Cintia and her son, João Vitor. Myself and the attorney for the government decided to have the decision on the briefs, but we are requested to do the oral argument. Excuse me. You are not entitled to have a decision on the briefs because you say so. Yes. Yes. And I think there seems to be massive misunderstanding about that among the bar. The arguments are not for your benefit. They are for our benefit. The commitment to represent somebody includes a commitment to show up for argument if we decide to have argument. Understood. I've never heard anybody say that before, that you've agreed not to have argument. You can't agree not to have argument. I'm here to ask to hold the decision in abeyance due to the primary petitioner be a VAWA petitioner, and her petition is currently pending with USCIS. Okay. And I wanted to ask about that because it would be helpful if you gave us some background on where that stands. She's got a hearing set for the 20th. Her son has a hearing set for another matter that gives him special immigrant juvenile status that's different from VAWA. They both are eligible to different things. Her son is under 21, so he's also eligible for VAWA as a derivative of his mother. Are all of these discretionary? Is it discretionary relief, or are any of these mandatory relief that they would be entitled to? They would be entitled as long as they meet the requirements, and they're both prima facie eligible. USCIS has already said that she is prima facie eligible to VAWA, violence against women. Unfortunately, about three years. It's been pending. That's the current estimate from USCIS, but I request that she doesn't get punished and sent back to a country where she may be persecuted due to USCIS taking a long time to decide. It's been pending already for about a year. What is the basis for that? I couldn't tell from the record whether it's based on domestic relations. Correct. Is it the partner that was here in the U.S.? Correct. Is he still here in the U.S.? Correct. She was married to him. It doesn't have anything to do with her going back because he's not there. No. He's not in Brazil. He's here. No. So she's not in greater danger if she goes back. She's probably in greater danger if she stays. There are two different things. The VAWA gives her legal status and pathway to citizenship. But in terms of you said she's going to go back to a place where she would be in danger, that depends on the merits of your claim, which are very weak, actually. As to the visa, which is based on domestic relations danger, the danger is here, not in Brazil. Correct. And her son is also eligible for special immigrant juvenile status. Due to financial constraints, it took a long time to get that moving, but we do have a hearing scheduled for the 20th of December. And I guess we'll find out on the 20th whether they'll decide at that time whether it's prima facie valid. There will be hopefully a predicate order from the King County Juvenile Court saying that he's eligible for that. After that, we can submit the I-360 petition with USCIS. That's another three years. No. That is actually very fast. Usually it takes about a month or two. And if he were to get status, what effect would that have on her? None. But would give him legal status. Here's what I'm worried about. I'm worried about the precedent we're setting if we delay them. I mean, what is the basis for delay? How do we decide that? It seems to me that that's tantamount to asking for a stay. And if you're asking for a stay, then we've got to look at the Niken factors or some factors. There has to be a likelihood of success on the merits. Correct. But I think it has to be a likelihood of success on the merits in this present case or that it would affect the likelihood of success on the merits in this present case. And even if there's some subsequent relief that may or may not be granted, how does that have a bearing on this particular case? Why shouldn't we decide this case before us? She shouldn't be punished because of USCIS delay. She would potentially have already a legal status that would be in the same position. I mean, if she didn't have, you know, if she didn't have this, I mean, she has a not meritorious claim currently. Why should we hold that just because she may or may not have a subsequent meritorious claim? Because she's a human being who has been abused in the United States by her LPR husband. And she continued to pursue the I-130 visa if she is removed. She could potentially would cause a hardship for her. But what about the son? Are his prospects of getting the visa affected if we affirmed the deportation, the removal order? If we were to... If he had a removal order that's final, he would still be eligible for the status. We would have to then reopen and terminate his case. We have to reopen. Yes. I would probably just file a motion to stay with ICE to keep him in the country. That will be resolved within a couple of months. Hopefully, yes. If USCIS does as it has been doing. We don't know with the new president. And that is an automatic. There's no discretion involved in that. No, you meet the requirements, you get it. And I have done that for many clients. And he's not married. He's under 21. His father is in Brazil and abandoned and neglected him. Well, look, I get this. I get that these are tragic circumstances. And I think what we're... At least what I'm grappling with is how do we do this in a way that comports with the law? Because we can't just start granting stays for every claim out there. I mean, it would be... Our caseload is already unworkable. And we can't just put all of these cases in abeyance. So what is the basis? And I guess you're... I mean, is there a legal basis? Or are you just basically saying I'm putting myself at the mercy of the court? Exactly, Your Honor. I'm asking for their safety in their lives. They have been already through a lot in Brazil and the United States. I'm not so sure it's fair to say you're asking for the safety of their lives. I understand the inconvenience. I understand that not splitting up a mother and her son. I understand that. But I don't think we should overstate... I mean, when you say safety in their lives, what are you saying? What's the threat? What's the safety in their lives that we're talking about? And they have eligible relief for a pathway to citizenship that's going to be thrown away. I mean, the problem with your underlying claim is that the attack was against the partner. And it's very dubious that it was on any protected ground. But aside from that, he's not even the partner anymore. He's not. So why would she be in any danger to go back to Brazil? Because they know that she was being held as his wife at the moment. She was, but she isn't. She's not. That's correct. So to pursue that, I want to give you a chance to do as good a job as you can. Help me understand why she's in danger if she goes back to Brazil. The loan sharks that have threatened her family would still potentially harm them. And you're saying that despite the fact that she's no longer married, the domestic... They don't forget things. ...that they were never her dads. They wouldn't forget it. They still want what they do, and they want compliance. And if people don't comply, they do what they say, which is take their lives. But they never threatened her, did they? They threatened the family as a whole. They threatened what? The family as a whole. And in what form did that threat take? Describe it to me in detail if you can. I believe it was verbal. And verbal to whom? To the partner at the time, including whoever was considered to be his family. In Brazil, there is this common law marriage. No, help me out with more detail. Who said what to whom? The loan sharks told her partner at the time that they would be harmed due to this debt. The loan shark at the time told the partner that the partner would be harmed and that the family would be harmed. Yes. Did anyone ever say anything to her? Not as far as I know. Okay. Okay. Do you want to reserve? Yes, Your Honor. Thank you so much. Thank you. Good morning, Your Honors. May it please the Court, my name is Elizabeth Oppmann on behalf of the Attorney General. I'd like to start with just talking about the visa applications that are at issue here. So we have the VAWA self-petition that is currently pending with USCIS. And is that a three-year time frame to get decided? Yes. I do believe, based on what I looked up, there is a 41-month processing time currently for the I-360 for VAWA self-petitioners. What effect would a removal have on that? Would it slow it? No, Your Honor. She can still pursue that even if she is ultimately removed from Brazil. The only thing that would change is she couldn't adjust her status. She would have to consular process through a consulate abroad. But she would still benefit from the waiver provisions. So she wouldn't have to get an unlawful presence waiver or any of the other waivers that one might normally have to get from a removal order or to waive her. But would the burden be on her? So if we grant – well, first of all, would the government remove her in the next three – I mean, I know it's hard to make a commitment over the next three years. But normally – I mean, I only say this because I'm dealing with another case where the government came in, asked for a stay of removal for an immigrant who was detained. We granted it, which is fairly – or excuse me, lifted the stay of removal. That was a year and a half ago, and the government's never removed them.  I mean, I just have this feeling that we're doing a lot of work that really is largely academic because it doesn't seem like the government's removing. So my question is, what's the likelihood that even if we denied the petition, she would be removed pending her I-130? That is a very good question, and I can't necessarily speak to the Department of Homeland Security. They have full discretion over how to execute and when to execute a removal order. Certainly, if the court does deny the PFR and the removal order is final, they can execute it at any time. And the I-130 – there's no regulation, there's no policy, right? There is a policy memo under – it's the Doyle memo that is currently in effect after United States v. Texas. And would that cover – that would cover the I-130? She could certainly reach out to the Department of Homeland Security and try to seek an administrative stay of removal after the decision, citing the Doyle memo, which does have – it does talk about VAWA self-petitioners as being a discretionary factor to consider in helping – in trying to get them to wait for an adjudication on the case. However, I mean, it is a very speculative form of relief at this time. Even with her prima facie determination, I would just point the court to 8 CFR 204.2 A6 – A6, excuse me – Romanet 4, which talks about the prima facie determination. It's really just a screening requirement – or, excuse me, it looks at screening eligibility, and it says quite clearly that it shall not be construed to make a determination on the credibility or probative value of the evidence that's been submitted. It allows those who have filed to get benefits, public benefits, while they're waiting for their petition to be adjudicated. So it shouldn't be construed as saying that there's a likelihood of success on her petition. So there is still a chance at the end of the processing. And what goes into it is it's all based on the domestic violence claim? Yes. So there's a – she submitted her I-360 application, her BalbaSelf petition, and there's a certain screening requirements that go through that USCIS – The determination that if what she says is – do we – first of all, we don't have this petition in the record. We don't know. No, we don't, Your Honor. But is this a determination that if what she says is true is credited after a hearing or further determination, then she gets the visa? I assume as much. I'm not entirely sure what USCIS's process is in terms of what happens after the prima facie case, but the regulation is quite clear that the prima facie determination should not be construed as a likelihood of success. Well, because she could be lying. That's possible. Well, certainly. I guess, yes. But what I'm asking is if she's not lying. I think that's correct. She's not lying. Yes, I think if she – yes, I think that's correct. Does it affect the VAWA application if the danger is here in the United States and she's removed to Brazil, which means now she's quite some distance from the danger? Does that affect the VAWA determination? I don't believe so, Your Honor. I'm pretty positive that they can still pursue the VAWA self-petition while abroad. It just would depend on the – it would just change that she can't adjust her status while in the United States once the – so there's still – this goes back to the speculative form. So once the I-360 is approved, or if it is approved, if it's approved, she would still need to wait for her priority date to become current in order to adjust her status or consular process. That is based on the Department of State's visa bulletins, which change every month. Right now, based on – Let me understand what you just said. You said she cannot apply for adjustment of status if she's in Brazil. If she's in Brazil, she would consular process. I think I just heard you say that that's going to place her in the back of a long line that she otherwise would not be in. Sorry, excuse me. Either way, she will have to wait for her priority date to become current, whether she's in the United States or abroad. So tell me again, because you've been talking kind of in code to me. I'm sorry. Well, it's not your fault. In terms of the practical adverse consequence if she's in Brazil compared to being in the United States. I don't think there are adverse consequences other than she's in Brazil and she would prefer to be in the United States. No, but you just said that there's something that she cannot do if she's in Brazil. Adjust status. Her status will not automatically change from no status to LPR, which is lawful permanent residence or a green call to order. Instead, she would go to the U.S. consulate with her approval notice once she's able to, and she'll get an immigrant visa in her passport, and she'll be able to travel back to the United States. And then once back in the United States? Then she gets her status. So it's just whether or not you get your status automatically in the United States or if you have to travel in. It's not a substantive hurdle. Yes. A couple things. First of all, do you know whether the claim of domestic violence is the former partner, the one that was in Brazil? I'm pretty confident that it's not. Renato Silva, she's not with him, and he, I believe, is also in the United States. They get traveled in together, and then shortly after the entry, separated. The domestic violence claim was for the garage of the person she married after that? Shortly after she entered the United States, she married someone. She actually did start green card proceedings with him just as his spouse, and then I think subsequently abuse started, and so she then started to pursue the VAWA self-petition. And secondly, there was also a, oh, I see. So the pending proceedings based on her marriage are not ongoing anymore? I don't believe so, but that's what the benefit of the VAWA is that she can still get her green card through him. What about the son? Sorry, say that again? So she just has one visa pending at this point, right? No, she doesn't have the one based on her marriage. Yes. And what about the son? So what we learned yesterday was that opposing counsel or petitioner's counsel filed the very, very preliminary document required to get a special immigrant juvenile status. So that is bifurcated proceedings. So the first part is you have to get a state court's predicate order that says that the child. And that's the hearing on the 20th? That's the hearing on the 20th, I believe. I was looking into Washington State court procedures for special immigrant juvenile, and I believe that's what the hearing is on the 20th. So at that time, he and Washington State has a special law that allows children that are between 18 and 21, which he is. He's going to turn 21 in August, I believe, of next year. That put him out? He has to file his S.I.J. before August or else he's not eligible for S.I.J. So that's another factor. But presumably, he would be able to file that after December 20th? Presumably. Presumably, if he gets his predicate order on the 20th, then he can file his. . . Do you have any reason to believe that the representation was inaccurate, that that would only take a couple of months? I'm not positive about that. I was initially. . . it's the same form, but I'm realizing that I didn't click. . . So I thought it was initially the same as his mother, 41 months, but I'm not positive about that. So I unfortunately can't know. We've had these before, and I do think she's basically right.  He would still need to wait for his priority date. . . a hearing in immigration court for these things. They're very moving, actually. Yeah. He would still need to wait for his priority date to become current. So even once he gets the S.I.J. processed, in order to get the green card, he still needs to wait for that priority date, which is based on when he files the S.I.J. application. So that date becomes. . . Do you have any sense of when that might happen? I do. He would be, I believe, under the employment-based fourth preference category, which is currently processing applications that were filed in February of 2021. So assuming he's filing in December 2024. But that doesn't matter as to his ability to stay in the country. No. Or the 21-year cutoff date.  Okay. But he would still likely be able to get the derivative status from his mom if they are both removed as a derivative of her Bible petition. What is the government's position on the motion that was filed last night? Should we hold this in abeyance, I mean, for two weeks or three weeks? The. . . We feel that the decision before the court is the asylum withholding and cap decision. And we don't feel that this. . . It's. . . We think that moving to an adjudication on that petition is what should happen in this case. However, if. . . One question about that. Yes. Was. . . Is there anything in the record that. . . Indicating that. . . We know she wasn't directly threatened. Was he threatened that. . . That she would be hurt? No, Your Honor. There's nothing in the record. The IJ really did ask this. . . Ms. Pereira numerous times. I think I counted six in multiple different ways on whether or not she was ever threatened. If her children were threatened. If they were ever threatened with harm. If they were ever harmed. And she was very clear that no one was. What about whether her partner was threatened that she would be hurt? I think she interpreted that there was a possible fear of future harm. But not because of anything that she said was said. Not in the testimony that was provided to the immigration judge that I read. I want to make sure I heard what I heard. You're saying that there was no threat to him that the family would be threatened? Not that I read in the testimony. Not that she testified to, no. She just inferred it. She inferred. I think she. . . Which is understandable. So the government's position remains that we should decide this now and let the subsequent happen? Yes. But if we did decide it now. . . The mandates don't win an issue for long enough to let these 20 days run. Now wouldn't be tomorrow or could be tomorrow. But it could be a week from now or whatever. So at least without any formal stay, we will know the result of the state court proceeding. Yes. And she can still seek to file a motion to reopen with the board. She still can pursue discretionary relief through the Department of Homeland Security. There are still other options available to her based on what does eventually happen that could allow her to remain in the United States. What discretionary relief? I'm sorry. The administrative stay of removal through the Department of Homeland Security is probably the primary one that I would think she would want to pursue. The larger concern here, and I'm sensitive to the statement that, you know, she's a human. Of course. But at the end of the day, we, you know, there's. . . I mean, the Constitution gives the executive branch certain duties and the judicial branch certain duties. And it seems like it's the executive branch's responsibility to sort of take those considerations into account. I worry when the judicial branch starts taking those into account. And, I mean, I would hope that somebody is taking those into account. But, you know, we're. . . I'm probably preaching to the choir here. But, I mean, we're enforced. . . we're tasked with enforcing the law. And. . . but sometimes we get put in tough positions like this. I mean, if he really has a valid claim, which I guess we'll find out, you know, we don't exactly want to participate in making their lives more difficult than they need to be. Certainly, and we fully understand that, Your Honor. Two other questions. Sure. At least at times, the government has been willing to mediate cases like this where you have pending petitions. Would you have any. . . what would your reaction to that be? I think our preference would be to proceed to an adjudication just based on the fact that this is fully briefed. It's. . . we're here. Well, how does the government decide when. . . sometimes I ask that question and they say yes. And, these, you know, these kinds of circumstances where there are pending visa petitions. And, sometimes you say no. And, is there any principles about. . . Yes. Yes, Your Honor. We do try to have principles about that. I think it really is based on, you know, how many resources have been put into it, where they are in their visa application process. Well. . . But, she's. . . I mean, the only reason she is held up like this is because the agency is way behind. Yes. And, he. . . I mean, I don't know the exact circumstances, but those proceedings. . . I mean, as you said. . . once he gets the state. . . if he gets the state approval. Isn't it fairly profitable? I believe so. But, again, it's. . . I can't really. . . So, if he gets the state approval, there would be. . . at that point, would you agree to a stay of the proceedings? Well, I think then it gets a little tricky in terms of. . . she. . . the primary petitioner doesn't really have any form of relief through the SIJ. So, even if that becomes a more immediate option. I know, but he could get the relief and she could leave. That's true. That's true. We could sever and do it that way. Certainly, if your honors would like this case to go to mediation, we would be happy to do so. Well, I didn't hear that. If your honors would like this case to go into mediation, we would acquiesce. As to one. . . as to the son or the. . . I mean, because the concern I have about the mother is. . . we're not. . . it's less sure that she'll get it, I think is what I heard you say. I don't know if I would say it's less sure. It's just. . . it's. . . I mean. . . it's longer, certainly. Farther away from an adjudication. One last thing. I didn't hear quite what you said you would be happy to do. If your honors would like to put this in mediation, the government would acquiesce. I mean, it seems like this new son issue could be resolved quickly. I mean, it would be just really easy if we just waited 20 days. Let somebody tell us whether he's gotten this, and at that point you say it's pretty pro forma. You could either send it to mediation, or at that point you could just agree to a stay for him, at least. Sure. Yes. Okay. Thank you. Thank you, your honors. I would like to point out that if they are removed, the son would no longer be eligible for the Special Immigrant Juvenile Status. You have to be in the country. The other thing is there is a current lawsuit made by a nonprofit. That is not true for the mother, though, right? Correct. Washington State is on the priority list for adjudication of Special Immigrant Juvenile Status, so things have been moving quickly lately for SIJ. So usually within a couple months, it is resolved. And with that approval, most times there is a deferred action, so he would be eligible to stay in the United States. The other thing is, yes, the prima facie determination doesn't mean necessarily that it's going to be an approval, but there is a lot of evidence on the record that these things are true. Will we know that within two months, theoretically? For the VAWA. For the mother? Yes. Okay. For the son, we probably would know earlier next year. Okay. Okay. Thank you. Thank you to both counsel for helping us in this case. The case is now submitted.
judges: FLETCHER, BERZON, NELSON